1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SLOANE S.,[1] | Case No.: 21cv1043-MMA(MSB) |
| Plaintiff, | **REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW [ECF NO. 16]** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | |
| Defendant. | |

This Report and Recommendation is submitted to the Honorable Michael M. Anello, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On June 1, 2021, Plaintiff Sloane S. filed a Complaint pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits.  (See Compl., ECF No. 1.)

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration. See https://www.ssa.gov/agency/commissioner.html (last visited on February 15, 2023).

1    Now pending before the Court is the parties' "Joint Motion for Judicial Review of

2  the Final Decision of the Commissioner of Social Security" ("Joint Motion").  (See ECF

3  No. 16 ("J. Mot.").)  For the reasons set forth below, the Court **RECOMMENDS** that the

4  Commissioner's decision be **REVERSED** and this matter be **REMANDED** for further

5  administrative proceedings consistent with this Report and Recommendation.

6                    **I.      PROCEDURAL BACKGROUND**

7    On July 24, 2018, Plaintiff filed an application for a period of disability and

8  disability insurance benefits under Title II of the Social Security Act, alleging disability

9  beginning on the same date.  (See Certified Admin. R., ECF No. 8 ("AR") at 220–21.)  Her

10  application was denied initially on October 11, 2018, and upon reconsideration on

11  March 18, 2019.  (AR 96–99, 102–06).  On May 28, 2019, Plaintiff requested a hearing

12  before an administrative law judge ("ALJ").  (AR 108–09.)

13    On July 28, 2020, ALJ James Delphey held a telephonic administrative hearing,

14  during which Plaintiff was represented by counsel.  (AR 37–71.)  Both Plaintiff and an

15  impartial vocational expert testified.  (Id.)  In a written decision dated September 28,

16  2020, the ALJ denied Plaintiff's application, concluding that Plaintiff had not been under

17  a disability from July 24, 2018, through the date of the decision.  (AR 18–36.)

18    On December 1, 2020, Plaintiff requested that the Appeals Council review the

19  ALJ's decision.  (AR 218–19.)  The Appeals Council denied the request for review on May

20  5, 2021, resulting in the ALJ's decision becoming the final decision of the Commissioner.

21  (AR 1–6); see also 42 U.S.C. § 405(g).  On June 1, 2021, Plaintiff timely filed the instant

22  civil action.  (ECF No. 1.)  Pursuant to the Court's briefing schedule, the parties timely

23  filed their Joint Motion for Judicial Review on September 23, 2022.  (ECF No. 16.)

24                    **II.     SUMMARY OF THE ALJ'S FINDINGS**

25    In rendering his decision, the ALJ followed the Commissioner's five-step

26  sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found

27  Plaintiff had not engaged in substantial gainful activity since July 24, 2018, the alleged

28  onset date.  (AR 23.)  At step two, the ALJ found Plaintiff had the following severe

impairments that significantly limit her ability to perform basic work activities:

> bilateral shoulder pain (greater right than left), status post remote shoulder arthroscopy with rotator cuff repair; incipient spondylosis and degenerative disc disease of the cervical spine; and generalized pain syndrome.  (Id.)

Notably, the ALJ found that Plaintiff's alleged fibromyalgia was not a severe impairment and that Plaintiff "has not shown that her other above-noted severe impairments, particularly chronic pain syndrome and degenerative disc disease, do not in themselves cause her reported pain and other symptoms."  (AR 24.)  Furthermore, the ALJ determined Plaintiff's "adjustment disorder with mixed depression and anxiety" was a non-severe mental impairment because it did not significantly limit Plaintiff's ability to perform basic mental work activities.  (Id.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 25.)  The ALJ considered the following listed impairments:  1.02 major dysfunction of a joint; 1.03 reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; and 1.04 disorders of the spine.  (Id.)  Based on his evaluation of the medical and opinion evidence in the record, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> [She can] perform light work as defined in 20 CFR 404.1567(b), except she is further limited to: occasional over the shoulder reaching bilaterally; frequent other direction reaching bilaterally; occasional pushing and pulling bilaterally; occasional climbing ramps or stairs; no climbing ladders, ropes or scaffolding; occasional balancing, stooping, kneeling, crouching or crawling; crawling; and no work at unprotected heights or adjacent to dangerous moving machinery.

(Id.)  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he noted "inconsistency between subjective complaints of pain and limitations . . . and the objective medical evidence and examination findings."  (AR 29.)  The ALJ concluded a light exertional level and non-severe mental conditions were appropriate, emphasizing

1    that Plaintiff "lives independently, exercises, and is relatively active."  (AR 27.)

2          At step four, the ALJ found that Plaintiff could perform her past relevant work as a

3    Secretary, Receptionist, and Cocktail Waitress.  (AR 29.)  Although Plaintiff performed

4    the first two jobs as composite jobs, the vocational expert ("VE") testified that a

5    hypothetical individual with Plaintiff's vocational experience could perform both as

6    freestanding jobs.  (Id.)  Finally, the ALJ proceeded to step five of the sequential

7    evaluation process.  The ALJ noted the VE's testimony that a hypothetical person with

8    Plaintiff's vocational profile and RFC could perform the requirements of other

9    occupations that exist in significant numbers in the national economy, such as

10   Housekeeping Cleaner and Assembler.  (AR 31.)  These occupations require the ability to

11   perform light work.  (Id.)  Based on the foregoing, the ALJ concluded Plaintiff had not

12   been under a disability as defined by the Social Security Act from July 24, 2018, through

13   the date of the decision.  (Id.)

14                              III.   **DISPUTED ISSUES**

15         The parties have briefed two issues in their Joint Motion, which Plaintiff asserts

16   are grounds for reversal:

17         1.      Whether the ALJ considered all of Plaintiff's impairments.  (J. Mot. at 4–14.)

18         2.      Whether the ALJ properly considered Plaintiff's subjective symptom

19   testimony.  (J. Mot. at 14–24.)

20                              IV.  **STANDARD OF REVIEW**

21         Section 405(g) of the Social Security Act allows unsuccessful applicants to seek

22   judicial review of the Commissioner's final decision.  See 42 U.S.C. § 405(g).  The scope

23   of judicial review is limited, and the denial of benefits will only be disturbed if it is not

24   supported by substantial evidence or contains a legal error.  Luther v. Berryhill, 891 F.3d

25   872, 875 (9th Cir. 2018).  "Substantial evidence" is a "'term of art used throughout

26   administrative law to describe how courts are to review agency factfinding.'"  Biestek v.

27   Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting T-Mobile South, LLC v. Roswell, 574 U.S.

28   293, 301 (2015)).  The Supreme Court has said substantial evidence means "more than a

mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Ninth Circuit explains that substantial evidence is "more than a mere scintilla but less than a preponderance."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).

Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  However, the reviewing court "may not reverse an ALJ's decision on account of an error that was harmless."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

## V.  DISCUSSION

### A.  Whether the ALJ Considered All of Plaintiff's Impairments

#### 1.  Summary of the parties' arguments

Plaintiff argues the ALJ erred by not considering her "cubital tunnel syndrome" when determining her RFC, thereby violating 20 C.F.R. § 404.1545(e).  (J. Mot. at 4–7.) Plaintiff contends the ALJ must consider all medically determinable impairments, including non-severe impairments, in the RFC assessment.  (Id. at 5.)  However, the ALJ did not mention or consider Plaintiff's cubital tunnel syndrome and associated limitations at both step two and in the RFC analysis.  (Id. at 5–6.)  Thus, Plaintiff argues

the RFC "does not accurately reflect the *most* that she can do despite limitations and impairments."  (Id. at 6.)  Plaintiff contends the medical evidence plainly establishes limitations in her hands and fingers.  First, Dr. Ansari observed Plaintiff has "lancinating pain into her right fourth and fifth fingers.  Both hands are very painful much of the time." (J. Mot. at 6; AR 351.)  Second, Dr. Jeswani noted that Plaintiff's pain "radiates down the medial aspect of her arm and into the medial aspect of her forearm into the fourth and fifth digits of her right hand." (J. Mot. at 7; AR 452.)  Thus, Plaintiff argues she is unable to perform the Secretary, Receptionist, and Cocktail Waitress jobs, which each require the use of hands.  (J. Mot. at 7.)

In response, the Commissioner contends that the ALJ "properly assessed Plaintiff's severe medically determinable conditions" and found Plaintiff had the RFC to perform light work with certain limitations.  (Id. at 7–12.)  Although Plaintiff complained of generalized hand pain, the Commissioner said she "never alleged disability due to cubital tunnel syndrome."  (Id. at 8.)  Further, the Commissioner argues two records that Plaintiff points to regarding her cubital tunnel syndrome do not indicate any manipulative limitations and pre-date her alleged disability onset date of July 24, 2018. (J. Mot. at 8–9; AR 354, 451.)  The Commissioner says the only record dealing with the relevant disability period—a February 5, 2020, questionnaire filled out by Dr. Ansari— was a "check-the-box form" the ALJ properly found was "not persuasive" under the agency's revised regulations.  (J. Mot. at 9–11; AR 542–45.)  The ALJ reasoned that Dr. Ansari's opinion was not supported by the record and noted the following:  (1) while Plaintiff complained of pain, medication helped her symptoms; (2) Plaintiff had normal motor strength in her bilateral upper extremities; and (3) Plaintiff walked her dog for up to two miles a day.  (J. Mot. at 11–12.)  Thus, the Commissioner argues the ALJ properly precluded cubital tunnel syndrome from the medically determinable severe impairments and RFC.  (Id. at 12.)

In reply, Plaintiff argues the Commissioner improperly attempts to make a "*post hoc* argument to shore up the ALJ's reasoning for failing to address [Plaintiff's] cubital

1   tunnel syndrome and resulting limitations in her hands and fingers." (Id.)  Plaintiff

2   reiterates that cubital tunnel syndrome affects the hands and fingers; therefore, the ALJ

3   should have considered records mentioning pain in these areas. (Id. at 13.)  Although

4   Plaintiff concedes that some records precede the disability onset date, she says the

5   agency must consider an individual's "complete medical history," meaning medical

6   records "covering at least the 12 months preceding the month in which you file your

7   application." (Id. (citing 20 C.F.R. § 404.1512 (b)(2).)  Further, Plaintiff asserts that

8   several medical records continue to note pain in her hands and fingers after her onset

9   date. (Id.)  For example, Dr. Sabourin reported Plaintiff's pain is "excruciating

10  intermittently in her hands and feet" and Plaintiff's initial Disability Report stated her

11  ability to work was affected by "severe hand and foot pain elbow." (J. Mot. at 13; AR

12  426, 264).  In conclusion, because the record clearly reflects Plaintiff experiences pain in

13  her hands and fingers, she argues the ALJ was required to address these limitations in

14  the RFC analysis. (J. Mot. at 14.)

15          **2.     Applicable law**

16          At step two, the ALJ determines whether a claimant has a severe impairment or

17  combination of impairments that is severe. See 20 C.F.R. § 404.1520(a)(4)(ii).  The step

18  two analysis is meant to be a threshold determination to "screen out weak claims."

19  Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing Bowen v. Yuckert, 482 U.S.

20  137, 146–47 (1987)).  It is not meant to determine which impairments should be

21  considered when assessing a claimant's RFC, or how the ALJ should evaluate the

22  impairments. Id. at 1048–49.  An ALJ's failure to consider an impairment as severe in

23  step two is typically not prejudicial, so long as the ALJ considers all limitations in the RFC

24  analysis. See, e.g., Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (holding that the

25  ALJ's failure to discuss Plaintiff's bursitis at step two was harmless because he

26  "extensively discussed" it at step four).

27          RFC, or residual functional capacity, is a claimant's ability to do work-related

28  activities on a sustained basis (i.e., eight hours a day, five days per week) despite

physical and mental limitations.  See 20 C.F.R. § 404.1520(a)(4).  Thus, it represents the maximum amount of work a claimant can perform based on all relevant evidence.  (Id.)  In making this finding, the ALJ must consider all of the claimant's impairments, including those that are non-severe.  See 20 C.F.R. § 404.1520(e); see also Buck, 869 F.3d at 1048–49 (quoting SSR 96-8P, 1996 WL 374184, at *5).  "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not."  Buck, 869 F.3d at 1048.  Additionally, the agency must consider the claimant's testimony regarding their capabilities and consider all relevant evidence, including medical records, lay evidence, and pain.  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); SSR 96-8P, 1996 WL 374184, at *5.  The Ninth Circuit has generally held that "an RFC that fails to take into account a claimant's limitations is defective."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009); Samples v. Comm'r Soc. Sec. Admin, 466 Fed. App'x 584, 586 (9th Cir. 2012).

Plaintiff applied for disability benefits after March 27, 2017.  (AR 220.)  Therefore, the Social Security Administration's revised regulations for considering medical opinions and prior administrative medical findings apply.  See 20 C.F.R. § 404.1520c (2017).  Under the revised regulations, the ALJ must evaluate the persuasiveness of any medical opinions and articulate his or her assessment as to each.  Id.  In evaluating persuasiveness, the ALJ must consider the medical opinion's supportability and consistency.  See 20 C.F.R. § 404.1520c(b)(2).  The ALJ may also consider the relationship between the source and the claimant, the source's specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  See 20 C.F.R. § 404.1520c(1)–(5).  Under the revised regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  Woods v. Kijakazi, 32 F. 4th 785, 787 (9th Cir. 2022); see also Julie R.M. v. Kijakazi, No. 20cv1608-GPC-MDD, 2021 WL 4993034, at *3 (S.D. Cal. Oct. 26, 2021).

///

**3.  Medical records and the ALJ's treatment thereof**

    **a.  Dr. Ansari**

Plaintiff contends three doctors substantiate her cubital tunnel syndrome and vocationally-relevant limitations in her hands and fingers.  (J. Mot. at 4–7, 12–14.)  On November 6, 2017, Dr. Rashad Ansari noted that Plaintiff experiences "pain down her right arm with lancinating pain into her right fourth and fifth fingers.  Both hands are very painful much of the time."  (AR 351.)  Upon physical examination, Dr. Ansari found that "[a]ny pressure over the medial epicondylar area causes patient to withdraw with lancinating pains into her right fourth and fifth fingers."  (AR 353).  Accordingly, Dr. Ansari said Plaintiff "appears to have a significant right cubital tunnel syndrome."  (AR 354.)  In a subsequent visit on November 17, 2017, Dr. Ansari recorded Plaintiff has "difficulty with weakness in her hands."  (AR 355.)  Additionally on February 5, 2020, Dr. Ansari observed that Plaintiff has "significant limitations" with reaching, handling, and fingering; he found she had the ability to grasp, turn, and twist objects twenty percent of an eight-hour workday and perform fine manipulations with fingers twenty percent of an eight-hour workday.  (AR 545.)

In his written decision, the ALJ noted that Dr. Ansari assessed a "less than sedentary exertional level" with certain limitations.  (AR 28.)  However, the ALJ found Dr. Ansari's opinion was "not persuasive and not supported by and consistent with the record," citing Plaintiff's daily activities and other evidence showing "normal and mild findings."  (Id.)  Although Plaintiff complained of pain, the ALJ noted that medication helped her pain symptoms.  (Id.)  Further, the ALJ stated that in November 2019 Plaintiff "reported walking her dog for 2 miles a day" and "physical examinations showed normal motor strength in the bilateral upper and lower extremities."  (Id.)  The ALJ did not discuss Dr. Ansari's findings related to Plaintiff's cubital tunnel syndrome or limitations in her hands and fingers.  (Id.)

/ / /

/ / /

### b.  Dr. Jeswani

On January 11, 2017, Dr. Sunil Jeswani noted that Plaintiff has significant right arm pain that "seems to originate from the right aspect of her neck and shoulder and then radiates down the medial aspect of her arm and into the medial aspect of her forearm into the fourth and fifth digits of her right hand."  (AR 450).  He evaluated the following:  "Phalen and Tinel's signs are significantly positive in the right cubital tunnel." (AR 451.)  In his written decision, the ALJ did not reference Dr. Jeswani by name, nor did he discuss Dr. Jeswani's determinations related to Plaintiff's pain in her hands and fingers.  (AR 18–36.)  The ALJ did not explain whether he found Dr. Jeswani's opinion persuasive or not.  (Id.)  However, he briefly mentioned the MRI and nerve conduction studies that Dr. Jeswani reviewed, suggesting he may have looked at Dr. Jeswani's notes.  (AR 26–28.)

### c.  Dr. Sabourin

On December 12, 2019, Dr. Thomas Sabourin performed an orthopedic consultation and recorded pain in Plaintiff's "neck, shoulders, wrists, hands, lower back, and feet."  (AR 426.)  He noted the pain originated in her shoulder or scapula, then "started being excruciating intermittently in the hands and feet."  (Id.)  Dr. Sabourin diagnosed Plaintiff with "generalized pain syndrome, etiology undetermined" and "right shoulder internal derangement, status post right shoulder arthroscopy."  (AR 430.)  He stated that while Plaintiff had significant tenderness, he could not find any "true orthopedic problems."  (AR 431.)  Accordingly, he assessed a medium exertional level, finding Plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently.  (Id.)  In his written decision, the ALJ found Dr. Sabourin's opinion to be "somewhat persuasive," determining it was generally supported and consistent with the record.  (AR 28.)  However, he found the Department of Developmental Services ("DDS") medical consultants' opinions better addressed Plaintiff's subjective complaints and therefore were more persuasive.  (Id.)  The ALJ did not mention Dr. Sabourin's observations regarding Plaintiff's pain in her hands and fingers.

### 4.  Plaintiff's testimony

During the administrative hearing on July 28, 2020, Plaintiff testified that she experiences "constant excruciating, debilitating pain" that emanates from her shoulders.  (AR 55.)  She said the pain is most significant in her scapular area, but she experiences "flareups in my hands, and my wrists, and my feet" that can range from two days to one week.  (AR 58.)  Plaintiff testified her daily living has decreased since she stopped working in July 2018.  (AR 46.)  For example, she said "I don't take care of things as much as I used to when I was at full capacity, so the house is dirty."  (Id.)  Aside from walking her dog once a day, Plaintiff said she is not involved in any activity groups or hobbies.  (AR 54.)  When asked about returning to one of her previous jobs, Plaintiff explained it would be impossible because of the excruciating pain she experiences.  (AR 55.)  She said her "quality of life is working at 2%."  (AR 56.)  Further, Plaintiff stated that after fifteen minutes of sitting in a regular, straight back chair, the pain becomes "excruciating" and she needs to get up, move, and prop up her arm.  (AR 58.)  Plaintiff testified that she used to exercise everyday but has not done so for years and can now lift only five to ten pounds.  (AR 59.)

### 5.    Analysis

After reviewing the record and the parties' arguments, the Court finds the ALJ erred by not considering, or making clear that he considered, Plaintiff's cubital tunnel syndrome and associated limitations.  At step two of the five-step process, the ALJ must determine the medical severity of the individual's impairments.  See 20 C.F.R. § 404.1520(a)(4)(ii).  Here, the ALJ concluded Plaintiff had several severe impairments including bilateral shoulder pain, degenerative disc disease, and generalized pain syndrome.  (AR 23.)  The ALJ also identified two non-severe impairments:  fibromyalgia and adjustment disorder with mixed depression and anxiety.  (AR 24.)  However, the ALJ did not mention cubital tunnel syndrome or pain in Plaintiff's hands and fingers.  (Id. at 23–24.)  Failing to discuss an impairment at step two is typically harmless if the ALJ nonetheless considers the impairment later, when formulating the RFC.  See Lewis, 498

1   F.3d at 911; <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9th Cir. 2005) (finding the ALJ's failure

2   to mention obesity at step two was harmless because the ALJ addressed it at steps four

3   and five).  Accordingly, the Court proceeds to the RFC analysis.

4          As argued by Plaintiff, the ALJ must consider both severe and non-severe

5   impairments when determining the RFC.  <u>See</u> 20 C.F.R. § 404.1545(a)(2) ("We will

6   consider all of your medically determinable impairments of which we are aware,

7   including your medically determinable impairments that are not 'severe' . . . when

8   we assess your residual functional capacity.")  Here, the ALJ found Plaintiff had

9   the RFC to perform "light work," with the following limitations:

10          occasional over the shoulder reaching bilaterally; frequent other direction
            reaching bilaterally; occasional pushing and pulling bilaterally; occasional
11          climbing ramps or stairs; no climbing ladders, ropes or scaffolding;
12          occasional balancing, stooping, kneeling, crouching or crawling; crawling;
            and no work at unprotected heights or adjacent to dangerous moving
13          machinery.  (AR 25.)

14   In reaching this determination, the ALJ explained he considered "all symptoms and the

15   extent to which these symptoms can reasonably be accepted as consistent with the

16   objective medical evidence and other evidence," as well as the medical opinions and

17   prior administrative medical findings.  (<u>Id.</u>)  He then described Plaintiff's history of right

18   rotator cuff repair in 2014 and subsequent re-injury in 2015, before summarizing the

19   results of various medical examinations between 2016 and 2019.  (AR 26–27.)  The ALJ

20   emphasized that Plaintiff "lives independently, exercises, and is relatively active, taking

21   long walks and doing . . . various activities," and asserted "[t]his range of activity is not

22   consistent with the subjective allegations of debilitating pain."  (AR 27.)  Ultimately, the

23   ALJ found that a light work RFC was appropriate and supported by the opinions of DDS

24   consultants, Dr. Durr, and the medical evidence.  (AR 29.)

25          Based on a review of the RFC analysis (AR 25–29), the Court concludes the ALJ did

26   not sufficiently address Plaintiff's cubital tunnel syndrome and pain in her hands and

27   fingers when reaching his conclusion.  The ALJ initially noted Plaintiff "reported she

28   cannot work due to fibromyalgia, severe back, shoulder, hand, foot, and elbow pain, and

severe headaches."  (AR 26.)  He also mentioned that Plaintiff reported pain in her

hands to Dr. Sabourin.  (AR 27.)  Aside from these two instances, he did not engage in

any substantive discussion of Plaintiff's cubital tunnel syndrome or limitations in her

hands and fingers.  By contrast, the record reflects that at least three doctors noted

cubital tunnel issues and/or substantial pain in Plaintiff's hands and fingers:  (1) Dr.

Ansari noted "lancinating pain into her right fourth and fifth fingers" and said Plaintiff

had "significant right cubital tunnel syndrome" (AR 351, 354); (2) Dr. Jeswani recorded

pain radiating "into the fourth and fifth digits of her right hand" and observed "Phalen

and Tinel's signs are significantly positive in the right cubital tunnel" (AR 450–51); and

(3) Dr. Sabourin wrote that Plaintiff's pain is "excruciating intermittently in her hands

and feet."  (AR 426.)  The ALJ provided no explanation for failing to incorporate the

above evidence.

  While Defendant correctly points out that several of these records precede

Plaintiff's disability onset date of July 24, 2018, descriptions of pain in Plaintiff's hands

and fingers appear throughout the medical evidence and in notes dated after July 2018.

(See AR 264, 351, 353–54, 450–52, 545.)  Additionally, the Social Security Administration

is required to consider the claimant's "complete medical history," including medical

records covering the twelve months preceding an application for disability benefits.  See

20 C.F.R. § 404.1512 (b)(2).[3]  Plaintiff's testimony also indicates pain in her hands.  In her

initial application for disability benefits, Plaintiff said that "severe hand and foot pain"

affected her ability to work.  (AR 264).  Moreover, during the administrative hearing,

Plaintiff testified to "constant excruciating, debilitating pain" and "flareups in my hands,

and my wrists."  (AR 55, 58.)  Here, the ALJ merely concluded Plaintiff's complaints of

---

[3] Dr. Ansari's relevant examinations occurred on November 6, 2017 (260 days prior to onset) and
November 17, 2017 (249 days prior to onset).  (AR 351, 354.)  Thus, they were both well within twelve
months of the relevant disability period.  See 20 C.F.R. § 404.1512 (b)(2).  Dr. Sabourin's examination
occurred on December 12, 2019, after the alleged onset date.  (AR 426.)  Only Dr. Jeswani's
examination on January 11, 2017, occurred more than twelve months prior to the alleged onset date.
(AR 450.)  In his written decision, the ALJ briefly summarized Dr. Ansari and Dr. Sabourin's opinions but
did not mention Dr. Jeswani.  (AR 18–36.)

1   widespread pain are "not entirely consistent" with the record, without pointing to

2   specific reasons why her general pain (and pain in her hands) should not be considered.

3   (AR 26.)  The ALJ's ambiguous allegation that Plaintiff's testimony is "not consistent"

4   with the record is insufficient.  See Treichler v. Comm'r Soc. Sec., 775 F.3d 1090, 1103

5   (9th Cir. 2014) (finding the use of boilerplate language falls short of the ALJ's

6   responsibility to provide "a discussion of the evidence").

7           Plaintiff's cubital tunnel syndrome and associated limitations could significantly

8   impact her ability to perform sustained activities in a work setting and therefore are

9   relevant to the RFC determination.  Indeed, using one's hands seems to be an essential

10  component of the past relevant work at issue in this case—Secretary, Receptionist, and

11  Cocktail Waitress.  Even if considered non-severe, Plaintiff's cubital tunnel syndrome

12  and pain in her hands were well-documented.  Thus, the ALJ was obligated to consider

13  these factors when making his RFC determination and provide "substantial evidence"

14  for any conclusions he reached.  Buck, 869 F.3d at 1048–49 (holding the ALJ must

15  consider both severe and non-severe impairments in the RFC analysis); Woods, 32 F. 4th

16  at 787 (holding the ALJ's conclusions must be supported by substantial evidence).

17  Nothing in the record, including the hypotheticals the ALJ posed to the VE (AR 64–70),

18  demonstrates he did so.  The phrase "cubital tunnel syndrome" does not appear at all in

19  the ALJ's written decision, and the ALJ mentions hand-pain only twice in passing.  (AR

20  26–27.)  Because an "RFC that fails to take into account a claimant's limitations is

21  defective," the Court concludes that the ALJ erred by failing to substantively consider

22  Plaintiff's cubital tunnel syndrome.  Valentine, 574 F.3d at 690; see also McCawley v.

23  Astrue, 423 Fed. App'x. 687, 689 (holding that RFC "may be the most critical finding

24  contributing to the final . . . decision about disability").

25  **B.**   **Whether the ALJ Properly Considered Plaintiff's Subjective Symptom Testimony**

26          **1.**     **Summary of the parties' arguments**

27          Plaintiff next argues the ALJ erred by improperly evaluating her subjective

28  symptom testimony in two regards.  (J. Mot. at 14–20.)  First, Plaintiff asserts the ALJ

wrongly concluded that her treatment of epidural steroid injections, shoulder injections, and a variety of opioid medications was "conservative."  (Id. at 14–17; AR 87, 367, 371, 401, 426, 450, 453, 464, 472.)  She says that doctors were "at a loss" for how to treat her persistent pain, and Dr. Ansari observed she "failed essentially all pharmacologic and physical therapies."  (J. Mot. at 16; AR 373, 377, 410, 414, 566.)  Moreover, Plaintiff consulted with several surgical specialists but was never offered orthopedic surgery as a viable option.  (J. Mot. at 16–17; AR 401, 412, 475.)  Plaintiff says she "has tried every modality offered to her:  physical therapy, pain medication, and injections," to no avail. (J. Mot. at 17.)

Second, Plaintiff argues the ALJ erred by using her daily activities to discredit her complaints of debilitating pain.  (Id. at 17–20.)  She says that although she may be able to complete tasks and activities of daily living ("ADLs"), she does so "while experiencing severe pain."  (Id. at 18–19; AR 375, 416, 427, 489, 495.)  Further, this pain specifically affects a workday by preventing her from sitting for prolonged periods and interfering with the concentration needed for "even simple work tasks."  (J. Mot. at 19; AR 416, 442, 543.)  Plaintiff says when she is home, she can adjust her activities depending on if she is having a "good" or "bad" pain day; however, the same is not possible in a work environment.  (J. Mot. at 19–20.)  Accordingly, because the ALJ did not provide "specific, clear, and convincing reasons" for dismissing her complaints of pain, Plaintiff argues the ALJ committed a harmful error.  (Id. at 24–25 (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015)).

In response, the Commissioner argues the ALJ properly assessed Plaintiff's subjective symptom testimony and found inconsistencies with evidence in the record. (Id. at 20–23.)  For example, on the one hand Plaintiff testified to ongoing issues with her shoulder, but on the other hand said she could "get by using Norco for her pain and she could do her activities and exercise."  (Id. at 21; AR 26, 408.)  Plaintiff also testified that she lived by herself and independently handled her personal care, grocery shopping, and dog walking, despite her complaints of debilitating pain.  (J. Mot. at 21;

AR 45, 53.)  Additionally, the Commissioner contends the ALJ properly noted that Plaintiff's treatment—which consisted of predominantly pain management—was "fairly conservative" compared to more aggressive treatments like orthopedic surgery.  (J. Mot. at 22; AR 27.)  The Commissioner says the ALJ acknowledged Plaintiff's pain, but merely disputed its severity.  (J. Mot. at 22.)  Finally, the Commissioner states Plaintiff's ability to complete daily activities "simply suggest[s] that Plaintiff is capable of more than alleged." (J. Mot. at 23.)  The Commissioner maintains that Plaintiff has failed to demonstrate harmful, legal error regarding the ALJ's evaluation of subjective testimony, and thus the ALJ's decision should be affirmed.  (Id.)

> **2.    Applicable law**

When evaluating the credibility of a claimant's allegations regarding subjective symptoms such as pain, the ALJ must engage in a two-step analysis.  See Johnson v. Kijakazi, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022); Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007).  First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain alleged, but only that it could have reasonably caused some degree of the pain.  Vasquez, 572 F.3d at 591 (citing Lingenfelter, 504 F.3d at 1036).

Second, if the claimant meets the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15).  "The clear and convincing standard is the most demanding required in Social Security cases." Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014–15).

General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler, 775 F.3d at 1102; Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). An ALJ's failure to identify specific statements and explain why they are not credible constitutes reversible error because the reviewing court cannot determine if the ALJ's decision was supported by substantial evidence. See Brown-Hunter, 806 F.3d at 489; see also SSR 16-3p.

"[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their medical sources, and observations by the Agency's employees and other persons. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p. Factors the ALJ may consider, in addition to objective medical evidence, include Plaintiff's daily activities; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p. The ALJ may also consider inconsistencies between Plaintiff's statements regarding pain and the medical evidence. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p.

### 3.     The ALJ's findings

Before conducting the two-step credibility analysis of Plaintiff's subjective symptom testimony, the ALJ summarized Plaintiff's pain in a single paragraph:

> The claimant reported that she cannot work due to fibromyalgia, severe back, shoulder, hand, foot, and elbow pain, and severe headaches (Exhibit 2E). She reported pain despite physical therapy (Exhibit 4E). She reported depression and anxiety. She testified to continued right shoulder and back pain, with limitations in lifting.

(AR at 26.) The ALJ then analyzed Plaintiff's credibility in one generic sentence, consisting primarily of boilerplate language:

1
2
3
4
5

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with, or substantiated by, the medical evidence and other evidence in the record for the reasons explained in this decision.

6
7
8
9
10
11
12

(Id.); see Treichler, 775 F.3d at 1103 (discussing the ALJ's statement that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," and noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction . . . before [identifying] what parts of the claimant's testimony were not credible and why.").

13
14
15
16

Next, the ALJ provided an approximately two-page summary of Plaintiff's medical history, from her right rotator cuff repair in 2014 to her current condition. (AR at 26–27.) Finally, the ALJ discounted Plaintiff's allegations of widespread pain as follows:

17
18
19
20
21
22
23
24
25
26
27
28

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, the objective medical evidence generally does not support the alleged extent of loss of function. The claimant reported chronic pain, with limitations to stand, walk, and lift (Exhibits 2E, 4E, Testimony). There is inconsistency between subjective complaints of pain and limitations, on one hand, and the objective medical evidence and examination findings, on the other hand. Moreover, the claimant lives independently, exercises, and is relatively active, taking long walks and doing the various activities as reported at Exhibits 7F/3 (independent in all ADLs, drives, manages own money, watches television, listens to music, cooks, washes dishes, cleans house, uses computer, exercises and walks dog), as amplified by 13F/14 (reports walking dog two miles daily). This range of activity is not consistent with the subjective allegations of debilitating pain. The undersigned finds that a reduced light exertional level and nonsevere mental findings (no B criteria greater than mild limits) are well-supported considering the record as a whole. The claimant's treatment has been conservative with no surgery since the alleged onset date, despite

her complaints of shoulder and other pain. Imaging and tests have been largely unremarkable (Exhibits 5F/18-19, 8F/7, 11F/9).

As noted above, the record in places indicates an additional diagnosis of fibromyalgia, which the undersigned finds does not satisfy the required criteria of SSR 12-2p, as the claimant's medical records do not support a finding that she has widespread pain throughout all quadrants of the body or have 11 positive tender points on physical examination (Exhibit 16F). The undersigned finds other medical conditions, as discussed herein, provide correlation to her reports of pain symptoms and findings showing tenderness to palpation (Exhibits 6F, 16F, 17F).

(AR 27.)

### 4.    Analysis

The Court now undertakes the two-step analysis to evaluate whether the ALJ properly challenged Plaintiff's subjective symptom testimony.  See Vasquez, 572 F.3d at 591.  Neither party contests the ALJ's determination that Plaintiff has the following severe impairments:  "bilateral shoulder pain (greater right than left), status post remote shoulder arthroscopy with rotator cuff repair; incipient spondylosis and degenerative disc disease of the cervical spine; and generalized pain syndrome."  (AR at 23.)  Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.  (AR at 28.)  Further, neither party alleges that the ALJ found that Plaintiff was malingering.  (See ECF No. 16.)  As a result, the Court must determine whether the ALJ identified "specific, clear, and convincing" reasons for rejecting Plaintiff's testimony. See Brown-Hunter, 806 F.3d at 488–89; see also Leza v. Kijakazi, No. 21-16079, 2022 WL 819782, at *2 (9th. Cir. Mar. 17, 2022).  In addition to giving clear and convincing reasons for rejecting Plaintiff's testimony, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient; the ALJ "must state which pain testimony is not credible and what evidence suggests the

21cv1043-MMA (MSB)

1  complaints are not credible."  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  As

2  discussed above, the Plaintiff argues the ALJ erred by (1) concluding her treatment was

3  conservative and (2) using her daily activities to discredit her complaints of debilitating

4  pain.  (J. Mot. at 14–20; 24–25.)  The Court considers each issue individually.

5                    **a.  Conservative Treatment**

6          The Ninth Circuit has held that conservative treatment can be a basis for

7  discounting a Plaintiff's "testimony regarding severity of an impairment."  Parra v.

8  Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (holding the use of solely over-the-counter

9  medication to treat pain was "conservative treatment" the ALJ could reasonably rely on

10  to discount Plaintiff's subjective testimony).  However, "[a]ny evaluation of the

11  aggressiveness of a treatment regime must take into account the condition being

12  treated."  Revels, 874 F.3d at 667.  Here, the ALJ broadly asserted that Plaintiff's

13  "treatment has been conservative with no surgery since the alleged onset date, despite

14  her complaints of shoulder and other pain."  (AR 27.)  The ALJ used this as an example of

15  inconsistency between Plaintiff's complaints about the "intensity, persistence, and

16  limiting effects of her symptoms" and "the objective medical evidence."  (Id.)  He further

17  stated that pain medication has "allowed [Plaintiff] to function."  (AR 28.)

18          The Court finds that the ALJ's conclusion that Plaintiff's treatment was

19  "conservative" is not supported by "specific, clear and convincing reasons."  Trevizo, 871

20  F.3d at 678; Brown-Hunter, 806 F.3d at 489.  The record reflects that Plaintiff has

21  attempted a wide array of treatments since her onset date, including many epidural and

22  other injections:

- October 5, 2016: "She does have some stenosis at the C5-6 level on the right hand side but she did not respond to epidural steroid injections at this level."  (AR 453.)
- January 11, 2017: "She underwent a C6 epidural steroid injection which, she states, made her symptoms worse."  (AR 450.)
- February 14, 2017: "She has been evaluated for her cervical spine and has undergone injections (epidural and nerve block) that have failed to provide relief."  (AR 464.)

- October 10, 2018: "multiple CS injections and multiple injections in R shoulder."  (AR 87.)
- October 19, 2018: "She has tried multiple cervical spine injections, multiple injections in the shoulder without any improvement."  (AR 401, 472.)
- December 12, 2019: "She tried multiple medications with no relief.  She went to Pain Management.  They did blocks, epidurals, and cortisone injections all with no relief."  (AR 426.)

Ninth circuit courts have held that injections are not "conservative" treatment.  See Garrison, 759 F.3d at 1015 n. 20; Patricia O. v. Kijakazi, No. 21-cv-376-CAB-BGS, 2022 WL 17760387, at *10 (S.D. Cal. Dec. 19, 2022); Harvey v. Colvin, NO CV 13-5376=PLA, 2014 WL 3845088, at *9 (C.D. Cal. Aug. 5, 2014).  Thus, Plaintiff's epidural and shoulder injections cannot be characterized as "conservative," nor can they be used to dismiss her subjective pain testimony.

In addition to injections, the record reflects that Plaintiff has taken a variety of opioid pain medications—Duloxetine, Gabapentin, Savella, Norco, Lyrica—with limited or no improvement to her widespread pain.  (See AR 373, 377, 410, 414, 566).  Dr. Ansari observed that Plaintiff "feels terrible" and experiences "severe side effects of somnolence and spaciness" from pain medication, in addition to continuing to complain of excruciating pain.  (AR 367.)  On March 6, 2019, Dr. Ansari noted that Plaintiff "failed essentially all pharmacologic and physical therapies.  At this juncture we'll recommend watchful waiting."  (AR 410.)  The record further demonstrates that Plaintiff was never advised to pursue surgery, despite consulting several surgical specialists.  (AR 401, 412, 475.)  Thus, because surgery was never a viable option, the fact that Plaintiff did not have one cannot be used against her.  See Lapeirre-Gutt v. Astrue, 382 Fed. App'x. 662, 664 (9th Cir. 2010) ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist.").

/ / /

Here, the medical evidence demonstrates that the epidurals, shoulder injections, and various pain pills did not provide effective relief for Plaintiff's constant and

21cv1043-MMA (MSB)

1  debilitating pain.  There is no indication that Plaintiff's doctors disbelieved her

2  complaints; rather, they continued to adjust her pain pills, order new tests, and

3  recommend she seek additional opinions.  The ALJ does not explain what specific

4  treatment he considers "conservative," nor does he explain how any particular

5  treatment undermines Plaintiff's allegations of widespread pain.  (AR 26–28.)  Instead,

6  he summarizes Plaintiff's pain in a single paragraph, glosses over her treatments to date,

7  and faults Plaintiff for not pursuing surgery—even though it was never recommended.

8  (Id.)  Because the ALJ fails to support his decision with "specific, clear, and convincing

9  reasons," the Court finds harmful error.  Brown-Hunter, 806 F.3d at 489.

10         **b.  Daily Activities**

11         The Ninth Circuit has advised that "ALJs must be especially cautious in concluding

12  that daily activities are inconsistent with testimony about pain, because impairments

13  that would unquestionably preclude work and all the pressures of a workplace

14  environment will often be consistent with doing more than merely resting in bed all

15  day."  Garrison, 759 F.3d at 1016; see also Albertson v. Colvin, 659 Fed. App'x. 372, 374

16  (9th Cir. 2016) (holding the claimant's ability to do basic household chores and

17  occasionally run errands was not enough to discredit her pain testimony).  Further,

18  "disability claimants should not be penalized for attempting to lead normal lives in the

19  face of their limitations."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations

20  omitted).  Here, the ALJ emphasized that Plaintiff "lives independently, exercises, and is

21  relatively active, taking long walks and doing the various activities as reported at

22  Exhibits 7F/3."  (AR 27.)  He noted that she independently completes "ADLs, drives,

23  manages own money, watches television, listens to music, cooks, washes dishes, cleans

24  house, uses computer, exercises and walks dog."  (Id.)  Based on the foregoing, the ALJ

25  concluded "[t]his range of activity is not consistent with the subjective allegations of

26  debilitating pain."  (Id.)

27         The ALJ's recitation of Plaintiff's daily activities does not, without more, constitute

28  a clear and convincing reason to reject her symptom testimony.  See Leza, 2022 WL

819782, at *2 (citing <u>Garrison</u>, 759 F.3d at 1016). In fact, there is substantial evidence in the record that demonstrates that, although Plaintiff completes certain daily activities, she does so while experiencing excruciating pain. During the hearing, Plaintiff testified that she spends her days sitting in bed, propping her arms up, and watching television. (AR 52.) She said she no longer socializes and only drives short distances; she is not involved in any group activities or hobbies. (AR 53–54.) Plaintiff testified she walks her dog approximately fifteen minutes a day, but emphasized "a 15-minute walk is not an eight-hour day." (AR 55.) One doctor noted, "[s]he tries to walk about 2 miles a day, but she states it is very painful. In general, she characterizes her pain as a sharp, throbbing pain, especially with walking, but with any activities to some extent" (AR 427). Another doctor observed Plaintiff "has difficulty with her right arm for any activity. Even driving is painful." (AR 416.) Similarly, a physical therapist noted "[p]ain is aggravated with the following activities or positions: looking down, working on the computer, cooking, gardening, lifting groceries." (AR 489.) The medical evidence further demonstrates that Plaintiff's pain directly impacts an eight-hour workday; Plaintiff said she "lost her job because she is unable to sit for prolonged periods of time because of pain in her right shoulder girdle." (AR 416.)

Based on review of the complete record, the Court finds that the ALJ did not provide "specific, clear and convincing reasons" for dismissing Plaintiff's pain testimony based on inconsistency with her daily activities. <u>Trevizo</u>, 871 F.3d at 678; <u>Brown-Hunter</u>, 806 F.3d at 489. The ALJ merely concluded Plaintiff's "range of activity is not consistent with the subjective allegations of debilitating pain," without explaining how these activities contradict her testimony or symptom allegations. (AR 27.) The ALJ places substantial weight on Plaintiff's ability to complete daily activities, rather than evaluating the full context of the activities and the pain she experiences while performing them. Furthermore, the ALJ did not make any findings that Plaintiff's activities are transferable to a work setting for eight hours a day, five days a week. <u>See</u> <u>Garrison</u>, 759 F.3d at 1016 ("The critical differences between activities of daily living and

activities in a full-time job are that a person has more flexibility in scheduling the former than the latter . . . and is not held to a minimum standard of performance").  Indeed, the fact that Plaintiff can walk her dog for fifteen minutes does not mean she can function in a work environment for an extended period of time.  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding claimant's ability to drive, grocery shop, or walk for exercise did not discredit her overall disability).  Because the ALJ has failed to explain how Plaintiff's activities were inconsistent with her testimony that she suffers from near-constant pain, the Court finds reversible error.  <u>See</u> <u>Brown-Hunter</u>, 806 F.3d at 489.

## VI.  CONCLUSION AND RECOMMENDATION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  <u>Id.</u>  The reviewing court has discretion in determining whether to remand for further proceedings or award benefits.  <u>See</u> <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  <u>See</u> <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  <u>See</u> <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985); <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980).

Here, Plaintiff requests the Court "remand for benefits," or alternatively "for further proceedings to present additional questions to the Vocational Expert regarding [Plaintiff's] limitations."  (J. Mot. at 26–27.)  Defendant asks the Court to affirm the Commissioner's final decision, or if the Court finds the ALJ erred, to remand for further administrative proceedings.  (<u>Id.</u> at 27.)  The Court has concluded that remand for further proceedings is warranted because additional administrative proceedings could

21cv1043-MMA (MSB)

remedy the defects in the ALJ's decision.  Specifically, the Court **RECOMMENDS** that, upon remand, Plaintiff's cubital tunnel syndrome and subjective pain testimony be reexamined, consistent with this Report and Recommendation.

For the foregoing reasons, the Court **RECOMMENDS** that Judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to 42 U.S.C. § 405(g).

**IT IS ORDERED** that no later than **February 27, 2023**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 6, 2023**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  February 15, 2023

_____
Honorable Michael S. Berg
United States Magistrate Judge

21cv1043-MMA (MSB)